IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

EMMANUEL PAGE,

    Plaintiff,                                                                                                  OPINION & ORDER

    v.                                                                                                                  14-cv-889-wmc

NURSE J. FELBER and
NURSE ANTHONY HENTZ,

    Defendants.
_____

*Pro se* plaintiff Emmanuel Page was granted leave to proceed in this case on claims that defendants Jean Felber and Anthony Hentz, both nurses at the New Lisbon Correctional Institution, acted with deliberate indifference to his need for medical treatment for serious breathing problems. Before the court is defendants' motion for summary judgment (dkt. #28), which will be denied based on genuine disputes of material facts about (1) whether Page had a serious medical need for an Albuterol inhaler; and (2) whether defendants were deliberately indifferent to that need. Further, in light of the medical questions involved in this case, the court will grant Page's request for assistance in recruiting counsel (dkt. #22), for the trial on his claims. Finally, Page's motion for a continuance (dkt. #40) will, therefore, be denied as moot, since the trial date and all other deadlines will be struck and this case will be stayed pending recruitment of counsel.

1

UNDISPUTED FACTS[1]

A. The Parties

At times relevant to this lawsuit, plaintiff Emmanuel Page was confined by the Wisconsin Department of Corrections at the New Lisbon Correctional Institution ("NLCI"). The defendants, Jean Felber and Anthony Hentz, were employed at NLCI as nurse clinicians. Both are licensed registered nurses.

Page has been diagnosed with asthma and chronic obstructive pulmonary disease ("COPD"), a lung disease that interferes with his ability to breathe properly. Asthma involves inflammation of the airways that contribute to airway obstruction, sometimes causing attacks of wheezing and shortness of breath. Although the symptoms vary from individual to individual, the primary symptoms of COPD usually include shortness of breath, wheezing, and cough with sputum production.

COPD typically worsens over time. There is no known cure for COPD, but the symptoms may be treatable and its progression can be delayed. Inhaled bronchodilators are the primary medications used to treat COPD. They help open airways and reduce shortness of breath and wheezing.

B. Obtaining Medical Care and Prescription Refills at the Prison

Inmates at NLCI are given an inmate handbook that provides instructions for obtaining medical care. The handbook instructs that when an inmate needs to refill a prescription medication, he must complete and submit a medication/medical supply refill

---

[1] Unless otherwise noted, the court finds the following facts material and undisputed for purposes of summary judgment as drawn from the parties' proposed findings of facts and responses and viewed in the light most favorable to plaintiff as the non-moving party.

form to HSU nursing staff. Inmates are advised to request refills 7-10 days before they will run out in order to provide sufficient time for central pharmacy and HSU to obtain the refill. HSU staff pick up medication refill requests and health services requests from the units generally between 5:00 a.m. and 7:00 a.m. on weekdays and around 9:00 a.m. on weekends/holidays or if an emergency supersedes weekday pickup.

Nursing staff fills the prescriptions themselves, taking note of when the last medication was dispensed on the patient medication profile sheet. This helps evaluate compliance and any misuse of the medication. Non-controlled medications, such as Albuterol, are placed in a zippered bag labeled for the housing unit. Security staff is supposed to then deliver the blue bag to the inmate's housing unit, where the medication is then distributed to the inmate.

The handbook instructs that if an inmate needs non-emergency medical attention, they must place a health service request in a designated box located on his housing unit. The request will then be forwarded to HSU. Nursing staff triage health service requests daily and will schedule an inmate to go to "sick call" if his stated problem requires medical attention. Sick call is held every weekday, which assures that the patient will be seen by a nurse, who will determine if he should be seen by a doctor. If an inmate feels he needs to be seen right away, he can contact housing unit staff, who can then notify HSU via telephone.

C. **Page's November 2014 Requests for Medical Care and Medication Refills**

During the relevant time period, Page was prescribed three inhalers to treat his asthma and COPD: Atrovent, Ciclesenide, and Albuterol inhalers. Page had been

3

instructed that when he used his inhalers, he should use the Albuterol inhaler first in order to open up his airways and allow the medication from the other inhalers to work more effectively.

On November 11, 2014, Page submitted a medication/medical supply refill request for Omeprazole (for treatment of gatroesophageal reflux disease), Meloxicam (nonsteroidal, anti-inflammatory drug with analgesic for pain relief), Ciclesonide inhaler (for asthma treatment) and Atrovent inhaler (used to treat the symptoms of COPD and asthma). Nursing staff dispensed those requested medications to be delivered to Page on November 12.

While the November 11 medication/medical supply refill request did not include a request for an Albuterol inhaler, Page claims that he had submitted a separate request during the same week for an Albuterol fast acting inhaler, because he had run out of Albuterol and his airways were not opening properly without it. Defendants have no record of such a request, and they deny receiving one. Regardless, it is undisputed that no Albuterol inhaler was dispensed that week.

On November 14, Page sent a health services request complaining that he had been experiencing headaches and dizziness due to elevated blood pressure and that he needed to see the doctor. The request also stated that he had been using several medications lately but his "body is not responding." An appointment was scheduled with Nurse Felber for November 15. On the morning of November 15, prior to his appointment, Page submitted another health service request, stating that he made a request for an Albuterol inhaler "days ago," but he had not received it. He further wrote

4

that he needed the Albuterol to take the Atrovent inhaler, and he was having trouble breathing.

Page saw Felber later in the day on November 15. Page told Felber that his headaches and dizziness had increased since starting prescriptions of Metroprolol and Losartan, both medications used mainly for high blood pressure treatment. Felber reassured Page that his blood pressure was okay but advised him that it needed to come down. Felber further discussed the need for Page to take his medications consistently and encouraged him to continue his relaxation techniques. Felber than scheduled an appointment for Page to see the physician regarding his medical issues.

During his November 15 visit with Nurse Felber, the parties dispute whether Page requested an Albuterol inhaler or made any complaints that he was having trouble breathing. Felber specifically denies that Page asked for an Albuterol inhaler or made complaints about breathing, stating that Page's complaints were solely about his blood pressure. Felber's contemporaneous, written report of that visit further states that she assessed Page's respiratory functions and found no apparent abnormalities.

According to Page, however, their visit went very differently. First, Page reports telling Felber that he had requested an Albuterol inhaler days ago, but had not yet received it. Page also maintains that he informed Felber that he had submitted a request form earlier that morning to be called down to HSU because he needed an inhaler to open up his airways, so that he could use his other inhalers, *and* that he was having trouble breathing. Page further represents that Felber declined to administer a peak flow meter test to determine if he had respiratory abnormalities, air flow construction or

5

worsening of lung function. Finally, Page says that Felber responded to his complaints about breathing by telling him that his appointment was only to assess plaintiff's high blood pressure.

The next day, on November 16, Nurse Felber acknowledges reviewing Page's November 15 HSU request regarding his need for an Albuterol inhaler. According to Felber, after receiving that request, she placed the medication in the blue bag labeled for Page's housing unit and gave it to a security officer to deliver to Page's housing unit in accordance with institution protocol. According to Page, however, when he went to the officer's station on the unit on the 16th, and asked whether an inhaler had been sent by HSU staff, the officers told him no inhaler had been sent.

During this time, Page was monitoring his own breathing using a peak flow meter he had in his cell. On November 16, the peak flow meter showed that his "number" was "slightly above 200" and in the "yellow zone."[2] He was also having trouble breathing and was experiencing inflammation, airway constriction, shortness of breath and wheezing. According to Page, all of these symptoms caused him to become emotionally distressed. Moreover, he could not exert much energy, and he felt like his oxygen supply was being cut off to the point of being suffocated.

On the morning of November 17, Page filed an inmate complaint that: (1) he still had not received an Albuterol inhaler; and (2) his chest was tight and his airway

---

[2] According to an article submitted by plaintiff from the American Academy of Allergy, Asthma and Immunology, the peak flow meter is a portable device that measures air flow or peak expiratory flow rate. A reading in the "yellow zone" indicates: "Caution, your asthma is worsening. Contact your allergist to fine-tune your therapy if you do not see improvement." (Dkt. #36-14.)

6

constricted.  Also on November 17, Page submitted another health service request and another medication refill form, seeking a fast acting inhaler, stating that he was having trouble breathing, and stating that he could not correctly take his other inhalers.  Page put the request in early, around 4:00 a.m., hoping that he would get called to HSU shortly after requests were picked up around 5:00 or 6:00 a.m.  Still, he was not called to HSU by either nurse clinician.  For the majority of the day, Page had so much trouble breathing that he had to lie down on his bed to prevent the onset of shortness of breath.  Around 4:30 p.m. on November 17, Page was sleeping in his bed when his cellmate alerted him that he was wheezing badly.  Page checked his peak flow meter test, which registered at 150, in the "red danger zone," indicating respiratory distress.  Page then went to the officer's station to tell the sergeant that he could not breathe and was having a COPD/asthma attack while waiting for an Albuterol inhaler from HSU.  He also told the sergeant that he needed a rescue inhaler immediately.  The sergeant then called HSU and reported this information to Nurse Hentz.

Page was then directed to report to HSU.  Because of his difficulty breathing and wheezing, another inmate took Page to HSU in a wheelchair.  Page waited 30 to 40 minutes until a nurse was available to examine him.  The parties dispute whether Page exhibited distress while he was in the waiting area of HSU.  According to Page, he could not move, and he was wheezing and having difficulty breathing.  According to defendants, however, Page did not appear to be in distress and did not appear to be having trouble breathing.

7

Eventually, Nurse Hentz examined Page. Hentz took Page's blood pressure, which was elevated, but did not administer a peak flow meter test to assess Page's ability to breathe. Instead, he measured Page's blood oxygenation with a pulse oximeter, finding that his O2 saturation level was 100%. Initially, Hentz also declined to give Page an Albuterol inhaler immediately, telling Page that records showed he had already received one. After about five to ten minutes of Page insisting that he had never received the inhaler, despite what the records might say, Hentz gave him the inhaler.

OPINION

Plaintiff claims that Nurse Clinicians Felber and Hentz violated his rights under the Eighth Amendment of the United States Constitution, which requires the state to "provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A prison official may violate the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need." *Id*. at 104-05. A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. *Id*. A medical need may be serious if it "significantly affects an individual's daily activities," *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, *Cooper v. Casey*, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are aware that the

prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

Under this standard, therefore, plaintiff's claim has three elements:

(1) Did plaintiff need medical treatment?

(2) Did defendants know that plaintiff needed treatment?

(3) Despite their awareness of the need, did defendants consciously fail to take reasonable measures to provide the necessary treatment?

In the face of a motion for summary judgment, plaintiff has the burden to show that a reasonable jury could find in his favor on each of these elements. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999). In moving for summary judgment, defendants argue that plaintiff is unable to meet that burden with respect to two of the three elements of his claims because: (1) he did not have an objectively serious medical need for an Albuterol inhaler or other treatment for his asthma and COPD on the relevant dates; and (2) they were not deliberately indifferent to any serious medical need of which they were aware. The court will address the evidence as to both elements separately below.

I. **Objectively Serious Medical Need**

Plaintiff contends that between November 15 and 17, he had a serious medical need for treatment of his asthma and COPD with an Albuterol inhaler and that the delay in receiving the Albuterol inhaler caused him to experience significant pain and distress, culminating in an asthma attack on November 17. Defendants dispute this, contending that plaintiff has no evidence that he was suffering from an objectively serious medical need for an Albuterol inhaler during the time he interacted with Nurses Felber or Hentz.

9

As this court noted in its initial screening order, asthma "can be, and frequently is, a serious medical condition, depending on the severity of the attacks." (Dkt. #22) (quoting *Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005); *see also Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("Asthma, depending upon its degree, can be a serious medical condition.")). Moreover, the undisputed evidence shows that plaintiff had been formally diagnosed with asthma and COPD and had been prescribed three inhalers, including an Albuterol inhaler, to treat his symptoms.

The relevant question for this case, therefore, is not whether plaintiff's asthma and COPD were serious medical conditions, but rather, whether the temporary withholding of an Albuterol inhaler likely caused plaintiff to suffer an objectively serious medical need. *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (explaining that a diagnosed medical condition does not necessarily establish a serious need, making the relevant question whether the failure to treat the condition caused injury or serious risk of injury). On that issue, plaintiff has submitted admissible evidence, consisting of his own declaration and the declarations of inmate witnesses, suggesting that plaintiff had serious breathing problems, wheezing, pain, and significant distress between November 15 and 17. There is also evidence that his Albuterol inhaler may have helped relieve some of these symptoms, particularly given that plaintiff had been prescribed a fast-acting Albuterol inhaler to help open his airways so that his other inhalers could work properly.

Defendants nevertheless contend that temporary denial of the Albuterol inhaler posed no objectively serious medical risk to plaintiff, as demonstrated by the following: (1) plaintiff did not complain about breathing problems or request an Albuterol inhaler

10

from Felber during his November 15 appointment; (2) Felber's exam did not reveal any breathing abnormalities; (3) he exhibited no serious symptoms during the time he waited to be seen by HSU on November 17; and (4) Hentz's exam revealed that plaintiff's blood oxygenation level was 100%. Additionally, defendants argue that plaintiff offered no evidence that he suffered harm or exacerbation of his condition *because of* the brief delay in receiving a new Albuterol inhaler.

The problem with defendants' recitation of these supporting "facts" is that they are largely disputed. Specifically, under plaintiff's version of events, he did complain to Felber on November 15 about breathing problems and the need for an Albuterol inhaler, and she *refused* to discuss his symptoms, administer a peak-flow test, or issue an Albuterol inhaler to plaintiff. Additionally, plaintiff contends that he did have objective and obvious symptoms of a severe asthma attack on November 17, causing both his cellmate and the sergeant on duty to conclude that HSU need to be contacted immediately. Further, the sergeant permitted plaintiff to be transported to HSU by wheelchair, supporting an inference that plaintiff was exhibiting symptoms of severe distress. Finally, plaintiff contends that he contacted HSU (and the ICE) *on multiple occasions* between November 15 and 17 regarding his need for an Albuterol inhaler.

Notwithstanding this testimony, defendants argue that no reasonable jury could believe plaintiff's version of events in light of medical evidence in the record -- consisting primarily of their own notes -- suggesting that plaintiff was not suffering from asthmatic or COPD symptoms on November 15 and did not have an asthma attack on November 17. As defendants' counsel is aware, however, "[c]redibility determinations, the weighing

11

of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Neither the notes from defendants' exams, nor their declarations establish that plaintiff's account is physically impossible or otherwise proves fabrication. However persuasive the nurses' contemporaneous medical notes may be, a jury must still determine whether plaintiff's account of his own symptoms and distress is believable.

Similarly, a jury must decide whether plaintiff was harmed by the delay in receiving an Albuterol inhaler. As defendants point out, even if plaintiff is to be believed, Felber's actions delayed plaintiff receiving the inhaler by only a day or two, while Hentz's actions only delayed plaintiff's access to the inhaler by 30 or 40 minutes. In light of these arguably short time spans, defendants argue that plaintiff cannot prove these delays were objectively serious, this issue, too, depends on disputed issues of material fact. "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citations omitted).

Here, plaintiff says he suffered extreme distress during both delays, which could have been easily reduced or eliminated by use of the Albuterol inhaler. A reasonable jury may conclude that plaintiff's symptoms were so extreme that even the brief delay in receiving the Albuterol inhaler amounted to an objectively serious medical need.[3]

---

[3] Admittedly, plaintiff's case would be stronger with corroborating medical testimony, but a lay jury could find an objectively serious medical need based on plaintiff's descriptions of the prescriptive benefit of Albuterol, the nurses claimed failure to provide it timely, the severity of his symptoms and the apparent relief he experienced after it was provided.

## II. Deliberate Indifference

The second element of plaintiff's claim requires him to prove that defendants Felber and Hentz were deliberately indifferent to his objectively serious medical need for an Albuterol inhaler. Although defendants also argue that plaintiff has no admissible evidence to prove this element of his claim, defendants again rely on a disputed version of events.

With respect to defendant Felber, defendants argue that plaintiff cannot prove deliberate indifference because he did not tell Felber at his November 15 appointment that he needed an Albuterol inhaler or that he was having breathing problems. Additionally, defendants contend that as soon as Felber was aware that plaintiff needed an Albuterol refill -- via an HSU request dated November 15, but not seen until after she saw plaintiff that day -- Felber promptly dispensed the inhaler.

Under plaintiff's version of events though, Felber ignored plaintiff's complaints about breathing problems and his request for an Albuterol inhaler, instead insisting at the purpose of the November 15 appointment was solely to discuss blood pressure concerns. Therefore, a reasonable jury could believe plaintiff's version of events, considering that there is undisputed evidence plaintiff *had* submitted an HSU request earlier on November 15 complaining of breathing problems and requesting an Albuterol inhaler. Certainly, it is plausible that plaintiff would raise that same breathing concern at his actual appointment given his HSU request from earlier in the day.

Additionally, although Felber insists that she dispensed the inhaler on November 16, plaintiff submitted evidence that no inhaler was ever dispensed that day. If a jury

13

were to believe plaintiff's version of events, it may reasonably conclude that Felber deliberately ignored plaintiff's requests for an Albuterol inhaler to treat his asthmatic and COPD symptoms, thus acting with deliberate indifference to a serious medical need. Since these material, factual disputes cannot be resolved at summary judgment, the court must deny defendants' motion for summary judgment with respect to plaintiff's claim against Felber.[4]

The same is true with respect to Hentz. Defendants argue that Hentz was not deliberately indifferent to plaintiff because, when Hentz saw plaintiff in HSU, he was relaxed and had no obvious signs of trouble breathing. Thus, defendants argue, Hentz was neither deliberately indifferent in requiring plaintiff to wait 30 or 40 minutes before being examined nor for making him wait an additional few minutes before giving him a rescue inhaler.

Again, however, the material facts are disputed. Plaintiff says he was sent to HSU because he was wheezing and was having trouble breathing, so severely that he was allowed a wheelchair and the assistance of another inmate to get there. He also maintains that he had conducted his own peak flow test earlier, which revealed significant respiratory distress. If a jury believed plaintiff's version of events, it could

---

[4] Defendants also argue briefly that Felber is entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Defendants contend that it was not clearly established that Felber's actions in filling and disbursing medication in accordance with institution protocol violated plaintiff's rights. Under plaintiff's version of events, however, Felber did not simply follow institution protocols for dispensing medication; rather, Felber would have completely ignored plaintiff's complaints about breathing problems and requests for an Albuterol inhaler. Because it is well established that prison officials cannot ignore a prisoner's serious health problem, plaintiff's version of events, if believed, would preclude a finding of qualified immunity.

conclude that Hentz acted with deliberate indifference by refusing to quickly provide plaintiff with a rescue inhaler and instead allowing plaintiff to suffer needlessly in the HSU waiting room for 30-40 minutes. Accordingly, defendants are not entitled to summary judgment.

### III.  Recruitment of Counsel

The final issue pending before the court is whether to grant plaintiff's renewed motion for assistance in recruiting counsel. Plaintiff previously requested assistance in recruiting counsel, but the motion was denied as premature. As this case has proceeded, plaintiff has shown that he is at least as capable as the average *pro se* litigant in representing himself. His summary judgment materials complied with this court's procedures and were well-supported by legal research and evidentiary submissions.

With a jury trial on the horizon, however, the court now agrees with plaintiff that it may be difficult for him to proceed with a trial on his own and that court assistance in finding counsel may appropriate. This is particularly true since plaintiff's claims involve medical issues, and plaintiff has not been able to retain any medical expert on his own. A medical expert may be particularly useful in addressing whether a temporary delay in receiving an Albuterol inhaler could cause the types of symptoms described by plaintiff or constitute deliberate indifference. That being said, the court also thinks this case may be appropriate for mediation. Plaintiff's claims are discrete and his alleged injuries are limited. Accordingly, the court will stay this case while the court looks for counsel to represent plaintiff at trial and/or mediation. After counsel has been recruited, the court will set a status conference to establish a schedule for the remainder of this case.

ORDER

IT IS ORDERED THAT:

(1) Plaintiff's motion for a continuance (dkt. #40) is DENIED as moot.

(2) Defendants Nurse J. Felber and Nurse Anthony Hentz's motion for summary judgment (dkt. #28) is DENIED.

(3) Plaintiff Emmanuel Page's motion for assistance in recruiting counsel (dkt. #22) is GRANTED.

(4) The remaining deadlines in this case are STRUCK and proceedings STAYED pending recruitment of counsel for plaintiff. Once counsel agrees to represent plaintiff, the court will schedule a status conference to reestablish a trial date and related deadlines.

Entered this 10th day of January, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge